**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO: 1:19-cv-23866**

| | |
|---|---|
| PEDRO J. CABRE, <br> KASSANDRA V. CRUZ, <br> YORMAR E. FARFAN, <br> BELLALIZ E. GONZALEZ, <br> NOIRALITH B. GONZALEZ, <br> GUSTAVO HERNANDEZ, <br> REINALDO J. QUINTERO, and <br> ERICK VILLASANA, <br> on behalf of themselves and all others <br> similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> COTTON HOLDINGS, INC. D/B/A <br> COTTON COMMERCIAL USA, <br> SUPERIOR STAFFING & PAYROLL <br> SERVICES, VCDP COMPANIES INC., and <br> DANIEL PAZ, in his individual capacity, <br><br> Defendants. | (JURY TRIAL DEMANDED) <br><br> COLLECTIVE ACTION |

# COMPLAINT

1.   In the aftermath of Hurricane Irma, in the fall of 2017, plaintiffs and all others similarly situated worked long hours, cleaning up two luxury resort hotels in the devastated Florida Keys. As part of the growing "resilience workforce"—workers engaged in preparing for and repairing after the increasingly frequent and forceful natural disasters in Florida and across the United States—the plaintiffs worked tirelessly to restore the Florida Keys after the Category 5 hurricane by, among other things, removing debris, chopping up trees, and demolishing sheetrock. The defendants promised set wages for their work but refused to pay the plaintiffs or their

colleagues the minimum wages and overtime compensation due to them under the law, even though the plaintiffs regularly worked far in excess of 40 hours per week for weeks at a time. Some plaintiffs were given checks that bounced, while others received no payment at all. Desperate, plaintiffs approached defendants Paz and Cotton and asked about their pay. Cotton's agent Daniel Paz attempted to silence them by threatening to "send immigration to your house." He repeated his threat to report the workers to immigration police, if they continued to ask for their pay. To date, the plaintiffs have yet to be paid the amount they are owed under the law.

2. The plaintiffs are employees or former employees of the Defendants Cotton Holdings, Inc. d/b/a Cotton Commercial USA, Superior Staffing & Payroll Services, VCDP Companies Inc., and Daniel Paz (collectively, "Defendants") and they bring this action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) on behalf of themselves and all other employees similarly situated. Plaintiffs bring this action because of defendants' unlawful deprivation of plaintiffs' rights to overtime compensation and the minimum wage. Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 and compensation, damages, equitable and other relief available under the FLSA, as amended, 29 U.S.C. § 201 *et seq.*

## JURISDICTION AND VENUE

3. Jurisdiction is conferred on this Court by 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

4. Venue lies within this district pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to Plaintiffs' claims occurred within this judicial district.

5. At all times material herein, each of the plaintiffs has been employed by Defendants to perform clean-up work in the wake of Hurricane Irma at sites managed by the Defendants in Florida. Specifically, plaintiffs performed such work for Defendants at sites in Key West and Key

Largo. Plaintiffs have each given their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b), and such consents are appended to this Complaint as Exhibit A.

6. Plaintiffs bring this action as a collective action on behalf of themselves and all others similarly situated in accordance with 29 U.S.C. § 216(b).

7. On September 6, 2019, Plaintiffs submitted to all Defendants a "Notice of Claim" pursuant to Fla. Stat. § 448.110(6)(a), noticing claims for violations of the Florida Minimum Wage Act (FMWA) based on the same facts alleged herein. Plaintiffs intend to amend the instant complaint to include an additional count for failure to pay the minimum wage pursuant to the FMWA if Defendants reject the Notice of Claim or otherwise fail to respond within 15 calendar days of the date of receipt of the Notice, in accordance with Fla. Stat. § 448.110(6)(b).

8. On September 6, 2019, Plaintiffs Kassandra Cruz, Yormar Farfan, and Bellaliz Gonzalez submitted a demand to collect payment from defendants Superior Staffing & Payroll Services and Daniel Paz for a number of dishonored checks pursuant to Fla. Stat. § 68.065(4). Plaintiffs intend to amend the instant complaint to include an additional count for claims on behalf of plaintiffs Cruz, Farfan, and B. Gonzalez under Fla. Stat. § 68.065 if defendants SSPS and Paz fail to tender payment of the full amount of the dishonored checks, plus the required statutory service charge, within 30 days from the receipt of the Notice.

## PARTIES

9. Plaintiffs Kassandra Cruz, Bellaliz Gonzalez, Gustavo Hernandez and Erick Villasana were jointly employed by Defendants as laborers to perform hurricane clean-up duties at the Hyatt Residence Club Key West, Windward Pointe following Hurricane Irma in 2017.

10. Plaintiffs Pedro Cabre, Noiralith Gonzalez and Yormar Farfan were jointly employed by Defendants as laborers to perform hurricane clean-up duties at the Hilton Key Largo Resort following Hurricane Irma in 2017.

11. Plaintiff Reinaldo Quintero was jointly employed by Defendants as a coordinator of laborers at five sites, including the Hyatt in Key West and the Hilton Key Largo Resort.

12. At all times relevant herein, all Plaintiffs have been "employees" of Defendants within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(e)(1).

13. Defendant Cotton Holdings, Inc. d/b/a Cotton Commercial USA ("Cotton") is a Foreign Profit Corporation headquartered in Katy, TX. Defendant Cotton's registered agent for service of process in Florida is Capitol Corporate Services, Inc., 515 East Park Avenue, 2nd Floor, Tallahassee, FL 32301. Among other things, Cotton provides disaster recovery and construction services in the state of Florida and maintains a permanent warehouse in Ft. Lauderdale. Upon information and belief, Cotton Holdings is owned in whole or in part by the Blackstone private equity firm, based in New York City.

14. Defendant VCDP Companies Inc. ("VCDP") is a Florida Profit Corporation headquartered in Tampa, FL. Defendant VCDP's registered agent for service of process in Florida is Adiurka P. Vegacardoso, 8450 Aiken Court, Tampa, FL 33615. Defendant VCDP is the parent company of Superior Staffing & Payroll Services.

15. Defendant Superior Staffing & Personnel Services ("SSPS") is a fictitious name for a business which is owned by defendant VCDP and is registered with the Florida Division of Corporations. VCDP's current address 8450 Aiken Court, Tampa, FL 33615. SSPS provides staffing services at disaster clean-up and construction sites in Florida.

16. Defendant Daniel Paz is the owner of Superior Staffing & Payroll Services and VCDP Companies, Inc. Defendant Paz is an individual who, upon information and belief, resides and is a citizen of the state of Florida. Defendant Paz has or does control directly or indirectly the management of defendant SSPS and VCDP.

17. At all times material to this action, Defendants have been an enterprise engaged in commerce as defined by 29 U.S.C. § 203(r)(1), with an annual dollar business volume in excess of $500,000. At all times material herein, Defendants have actively conducted business in the state of Florida.

18. Defendants are, and at all material times have been, "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d).

19. All Defendants have jointly operated and managed the business in which Plaintiffs have worked; defendants are plaintiffs' "employers" and/or "joint employers" under the FLSA. Each defendant is jointly and severally liable for any damages owing to the Plaintiffs, including back pay, liquidated damages and attorneys' fees.

## FACTS

20. On September 10, 2017, Hurricane Irma made landfall in the Florida Keys.

21. Hurricane Irma destroyed more than 4,000 homes, 1,800 boats, and vegetation and property debris was strewn across the landscape in Monroe County. In addition, almost all homes and businesses in the Keys lost power, water, sewer, cell service and internet service. *See* "Hurricane Irma," *Emergency Management: Monroe County, FL* (last accessed Aug. 15, 2019), *available at* https://www.monroecounty-fl.gov/982/Hurricane-Irma.

22. In 2017 and at all times relevant herein, the minimum wage in Florida was $8.10 per hour. The federal minimum wage at all times relevant herein was $7.25 per hour.

5

23. In the days following Hurricane Irma, a representative of Superior Staffing & Payroll Services (SSPS), Lizbeth Martinez, visited a Cotton warehouse in Ft. Lauderdale where Cotton maintains moving and construction equipment. During this meeting, Martinez made an agreement with Cotton for clean-up work at five separate sites.

24. While Martinez was at the Ft. Lauderdale warehouse, a Cotton supervisor, Derrick Randle, suggested that SSPS hire plaintiff Reinaldo Quintero to recruit workers for the five work sites. At the time of this discussion, Quintero was employed by a temporary staffing company at the Cotton warehouse in Ft. Lauderdale. Martinez agreed that this was a good idea and hired Quintero.

25. Plaintiff Quintero then began recruiting workers for the five sites in the Florida Keys. However, Quintero eventually quit after five weeks after the Defendants failed to pay him for his work time.

26. Plaintiffs, excluding plaintiff Quintero who was a Coordinator, worked at two of the five sites managed by Cotton and staffed by SSPS: the Hyatt Windward Pointe in Key West and the Hilton Key Largo Resort.

27. At these work sites, plaintiffs' job duties included, but were not limited to the following: tearing out and putting up new sheetrock; hauling trees that had fallen with tractors; collecting trash and debris; power-washing outside hotel walls.

28. The job duties plaintiffs other than coordinators performed required the use of drills, saws, forklifts and other heavy machinery.

29. Plaintiff Quintero's job duties as a coordinator included but were not limited to: recruiting workers; receiving, reviewing and transmitting timesheets to SSPS; troubleshooting problems for workers, such as securing housing.

30. Upon information and belief, SSPS initially recruited workers for the clean-up sites with the help of plaintiff Quintero, but Cotton made decisions about hiring and firing of employees at the work sites.

31. SSPS promised to pay the workers at the Hyatt Windward Pointe and the Hilton Key Largo Resort at a rate of $10 or $11 per hour, depending on the site.

32. While performing work for Defendants, Plaintiffs at the work sites were required to wear orange vests with Cotton's name and logo.

33. Cotton provided plaintiffs at the hotel sites with gloves, work boots, and hard hats that were worn at the work sites.

34. Supervisors at each clean-up site were employed by Cotton, some or all had come from Houston, and wore black vests with Cotton's name and logo.

35. On the few occasions that plaintiffs did receive paychecks, these paychecks were issued by SSPS and signed by Daniel Paz.

36. At the end of each week, workers submitted timesheets with a Cotton logo to plaintiff Quintero. Quintero then submitted these timesheets directly to Daniel Paz.

37. As employees of Defendants, Plaintiffs and other employees similarly situated have regularly worked more than 40 hours per week; however, as set forth below, they have not been paid the legally required minimum wage nor overtime wages for all of the hours they worked for Defendants.

38. A number of workers, including plaintiff Quintero and plaintiff Hernandez, complained to Daniel Paz about their lack of pay, but Paz threatened to send immigration officials to their homes or to call immigration authorities if they did not leave him alone. For example, Daniel Paz told plaintiff Quintero via text message that he would report them to immigration,

stating "Yo soy Americano" ("I am American"). Similarly, Daniel Paz told plaintiff Hernandez via text message: "No le debo nada a usted ok deje de molester o imigravcion se ira a su casa" ("I owe you nothing ok stop bothering [me] or immigration will come to your house"). Most of the workers are recent immigrants fleeing the current turmoil in Venezuela.

39. In November 2017, Cotton staff agreed to look into the workers' lack of compensation. However, in December 2017, Cotton Commercial President James Scaife claimed to a television station, "We have not previously been made aware of any allegations involving Superior Staffing, particularly with regard to the failure to pay employees."

*Hyatt Windward Pointe in Key West*

40. Approximately 20 individuals were hired to work at the Hyatt Windward Pointe in Key West. These individuals include, but are not limited to, plaintiffs Kassandra Cruz, Bellaliz Gonzalez, Gustavo Hernandez and Erick Villasana.

41. At this Hyatt in Key West, plaintiffs worked approximately 11 hours per day, seven days per week for approximately five weeks beginning on or around September 18, 2017.

42. While plaintiffs working at the Hyatt site received paychecks at the end of the first week and these checks cleared when deposited, all subsequent paychecks received by the plaintiffs bounced. Thus, plaintiffs have not received any pay for work performed at this location after the first week.

43. The paychecks that plaintiffs received, including those that bounced, did not include payment at the rate of time and one half for hours worked over 40 in a workweek.

44. The Hyatt Windward Pointe in Key West was reopened by December 2017, just two months after the storm, according to reviews on the website Trip Advisor.

8

*Hilton in Key Largo*

45. Approximately 25-30 individuals were hired to work at the Hilton in Key Largo. These individuals include, but are not limited to, plaintiffs Pedro Cabre, Noiralith Gonzalez, and Yormar Farfan.

46. The project at the Hilton in Key Largo lasted four weeks, beginning on or around September 18, 2017.

47. Plaintiffs were promised $10 per hour for work at this site.

48. Plaintiffs worked from Monday-Saturday for approximately 11-12 hours per day, totaling approximately 60-65 hours per week.

49. The check that plaintiffs received for the final week of work bounced. As such, plaintiffs and others similarly situated have not been paid for their work time.

50. The paychecks that plaintiffs received, including those that bounced, did not include payment at the rate of time and one half for hours worked over 40 in a workweek.

51. At least one individual called plaintiff Quintero to complain about the lack of pay for the final week of work. However, at that time, plaintiff Quintero was no longer working for Defendants. The workers spoke with Quintero's replacement, who explained that there was a problem with the funds and told him to contact Lizbeth Martinez. The worker then called both Martinez and Daniel Paz, but neither of them responded.

52. The Hilton Key Largo underwent an "extensive transformation" according to its website and, in late 2018, reopened as part of the elite Hilton Curio Collection.

*Coordinators*

53. Upon information and belief, there were 2 individuals employed by Defendants in the position of Coordinator, including plaintiff Reinaldo Quintero.

9

54. Plaintiff Quintero was promised $24 an hour for his work in this position, plus an additional dollar per hour from each person he recruited to work.

55. Plaintiff Quintero worked for Defendants for 18 hours per day for five weeks, but he did not receive any pay for any of his work time.

56. Plaintiff Quintero did not receive overtime pay at a rate of time and one half for the hours he worked over 40 in a workweek.

## COLLECTIVE ACTION ALLEGATIONS

57. Defendants have violated the provisions of the FLSA resulting in damages to plaintiffs and those similarly situated to the plaintiffs in the form of unpaid minimum and overtime wages, incurred and incurring costs, and reasonable attorneys' fees.

58. As a result of the minimum wage and overtime pay violations of the FLSA, the named plaintiffs, as well as those similarly situated to the plaintiffs, have suffered damages by failing to receive their lawful wages during their tenure of employment with defendants. In addition to the amount of unpaid wages owing to the named plaintiffs, and those similarly situated to the plaintiffs, they are also entitled to an additional amount as liquidated damages pursuant to 29 U.S.C. 216(b).

59. The plaintiffs and those similarly situated to the plaintiffs are also entitled to an award of attorneys' fees pursuant to 29 U.S.C. § 216(b).

60. Defendants' actions in failing to compensate the plaintiffs and other similarly-situated employees of defendants in accordance with the provisions of the FLSA were willful and not in good faith.

61. There are numerous other similarly situated employees and former employees of defendants who have been improperly compensated in violation of the FLSA who would benefit

from the issuance of court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Specifically, all employees and former employees of Defendants who have been employed by the Defendants in Florida to perform clean-up work following Hurricane Irma at sites managed by Defendants should receive notice and the opportunity to join the present lawsuit.

62. Each of the Defendants was and/or is a joint employer of some or all of the plaintiffs for the time period in which each Defendant was either an employer or acted in the interest of an employer. Each Defendant is jointly and severally liable for any damages owing to those plaintiffs, including back pay, liquidated damages and attorneys' fees, for which they were joint employers. The FLSA permits an employee to recover, jointly and severally, from all individuals or entities who are employers or who act in the interest of an employer with respect to the employee under the FLSA.

## COUNT I

### Failure to Pay Minimum Wages Pursuant to the FLSA, 29 U.S.C. § 206

63. Plaintiffs repeat and incorporate by reference the allegation set forth in Paragraphs 1 through 62, above.

64. At all times material herein, the FLSA required that employees shall be paid not less than $7.25 an hour for all hours worked. *See* 29 U.S.C. § 206(a)(1). The Defendants have failed to provide plaintiffs and those similarly situated with any compensation for the many hours they performed clean-up work after Hurricane Irma, let alone the minimum wage. This is a violation of Section 6(a)(1) of the FLSA, 29 U.S.C. § 206(a)(1).

65. Defendants' violations of the FLSA as alleged herein have been done in an intentional, willful, and bad faith manner.

66. As a result of the aforesaid willful violations of the FLSA, minimum wages have been unlawfully withheld by Defendants from plaintiffs, and those similarly situated to them, for which Defendants are liable pursuant to 29 U.S.C. §§ 216(b) and 255, together with an additional equal amount as liquidated damages, interest, reasonable attorneys' fees, and the costs of this action.

67. As a result of Defendants' willful and purposeful violations of the FLSA, there have become due and owing to each of the plaintiffs various amounts that have not yet been precisely determined. The employment and work records for each plaintiff are in the exclusive custody and control of Defendants and the plaintiffs are unable to state at this time the exact amounts owing to each of them. Defendants are under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to plaintiffs from which the amounts of Defendants' liability can be ascertained.

## COUNT II

### Failure to Pay Overtime Wages Pursuant to the FLSA, 29 U.S.C. § 207

68. Plaintiffs repeat and incorporate by reference the allegation set forth in Paragraphs 1 through 67, above.

69. The FLSA requires employers to pay employees overtime compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of the maximum hours described in 29 U.S.C. § 207.

70. At all times material herein, plaintiffs, and those similarly situated to them, have worked hours in excess of the hourly levels specified in the FLSA, 29 U.S.C. § 207(a) in one or more workweeks. As a result, at all times material herein, plaintiffs, and those similarly situated

to them, were entitled to overtime compensation at a rate of not less than one and one-half times their regular rate of pay for the hours they have worked in excess of 40 hours per workweek. 29 U.S.C. § 207(a).

71. At all times material herein, Defendant has failed and refused to provide plaintiffs, and those similarly situated to them, with overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they have worked in excess of 40 hours a week thereby directly violating section 7(a) of the FLSA. 29 U.S.C. § 207(a).

72. Defendant's refusal to provide overtime pay at the lawful rate to plaintiffs, and those similarly situated to them, for the hours they have worked in excess of 40 hours in a workweek, as specified in the FLSA, 29 U.S.C. § 207(a), wrongly deprived them of the overtime compensation that has been due to them at all times material herein.

73. As a result of the aforesaid willful violations of the FLSA, overtime compensation has been unlawfully withheld by Defendants from plaintiffs, and those similarly situated to them, for which Defendants are liable pursuant to 29 U.S.C. §§ 216(b), together with an additional equal amount as liquidated damages, interest, reasonable attorneys' fees, and the costs of this action.

74. As a result of Defendants' willful and purposeful violations of the FLSA, there have become due and owing to each of the plaintiffs various amounts that have not yet been precisely determined. The employment and work records for each plaintiff are in the exclusive custody and control of Defendants and the plaintiffs are unable to state at this time the exact amounts owing to each of them. Defendants are under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to plaintiffs from which the amounts of Defendants' liability can be ascertained.

## **COUNT III**

### **Unlawful Retaliation in Violation of 29 U.S.C. § 215(a)(3)**

75.     Plaintiffs repeat and incorporate by reference the allegation set forth in Paragraphs 1 through 74, above.

76.     Section 215(a)(3) of the FLSA renders it unlawful for employers "to discharge or in any other manner discriminate against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3).

77.     The purpose of the FLSA's anti-retaliation provisions is to allow employees to report violations of the FLSA without fear of reprisal from their employer. Thus, section 15(a)(3) prohibits retaliation or threats against employees who complain of not being paid the minimum wage or overtime. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2010).

78.     Plaintiffs Reinaldo Quintero and Gustavo Hernandez, and others, engaged in protected activity under the anti-retaliation provisions of the FLSA by repeatedly complaining to defendant Paz, both in person and via text message, about the defendants' failure to pay the workers proper minimum and overtime wages.

79.     Defendants unlawfully retaliated against plaintiffs Quintero and Hernandez, and others similarly situated, for their complaints regarding the Defendants' failure to pay the workers proper minimum and overtime wages by threatening to report them to immigration authorities and/or to send immigration authorities to the workers' homes and then simply refusing to pay them the wages that they were owed in response to their complaints thereby inflicting an adverse employment action upon them.

80. For these willful violations of 29 U.S.C. § 215(a)(3), defendants are liable to plaintiffs Quintero and Hernandez, and others similarly situated, under 29 U.S.C. § 216(b) for compensatory and punitive damages, reasonable attorneys' fees' and costs, and any other relief deemed appropriate by this Court.

## PRAYER FOR RELIEF

Wherefore, the plaintiffs pray that this Court grant relief against the Defendants as follows:

(a) Enter a declaratory judgment declaring that the Defendants have willfully and wrongfully violated their statutory and legal obligations and deprived plaintiffs and all others who are similarly situated of their rights, privileges, protections, compensation, benefits, and entitlements under the FLSA as alleged herein;

(b) Order a complete and accurate accounting of all the compensation to which the plaintiffs and all others who are similarly situated are entitled;

(c) Award plaintiffs and all others who are similarly situated monetary damages in the form of back pay compensation and benefits; unpaid entitlements; liquidated damages under federal law equal to their unpaid compensation, plus pre-judgment and post-judgment interest;

(d) Award plaintiffs Quintero and Hernandez, and all others who are similarly situated, compensatory and punitive damages for unlawful retaliation under the FLSA;

(e) Award plaintiffs, all those similarly situated, their reasonable attorneys' fees to be paid by the defendants, and the costs and disbursements of this action; and

(f) Grant such other legal and equitable relief as may be just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby respectfully request a trial by jury on all claims presented in this Complaint.

Respectfully submitted,

*/s/ Erin F. Medeiros*
Matthew J. Mierzwa, Jr.
Erin F. Medeiros
Mierzwa & Floyd, P.A.
3900 Woodlake Blvd., Suite 212
Lake Worth, FL 33463
Phone: (561) 966-1200
Fax: (561) 966-1231
E-mail: mmierzwa@mierzwalaw.com
E-mail:emedeiros@mierzwalaw.com

*/s/ Gregory K. McGillivary*
Gregory K. McGillivary
Sara L. Faulman
Sarah M. Block
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave. NW
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
Fax: (202) 452-1090
E-mail: gkm@mselaborlaw.com
E-mail: slf@mselaborlaw.com
E-mail: smb@mselaborlaw.com

*/s/ Kerry O'Brien*
Kerry O'Brien
Resilience Force Justice Project
53 W. Jackson Blvd., Suite 1224
Chicago, IL 60604
Phone: (202) 316-8049
Fax: (773) 214-0670
E-mail: kobrien@resilienceforce.org