**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**KEY WEST DIVISION**

**CASE NO: 4:19-cv-10163-JEM**

PEDRO J. CABRE,
KASSANDRA V. CRUZ,
KENDRY CRUZ,
VANESSA CRUZ,
YORMAR E. FARFAN,
BELLALIZ E. GONZALEZ,
NOIRALITH B. GONZALEZ,
GUSTAVO HERNANDEZ,
JENNIS MORALES,
JOSE MOYEDA,
DAVID ROMERO,
SAMIRA OMAR,
REINALDO J. QUINTERO SR.,
REINALDO QUINTERO JR., and
ERICK VILLASANA,
on behalf of themselves and all others
similarly, situated,

    Plaintiffs,

v.

COTTON COMMERCIAL USA, INC.
SUPERIOR STAFFING & PAYROLL
SERVICES, VCDP COMPANIES INC., and
DANIEL PAZ, in his individual capacity,

    Defendants.

**COTTON COMMERCIAL USA, INC.'S**
**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR COLLECTIVE AND CLASS ACTION CERTIFICATION**

81809098v.3

## I. INTRODUCTION

This case does not justify treatment as a collective action under the Fair Labor Standards Act ("FLSA") or as a class action under Federal Rule of Civil Procedure 23.  Other than conclusory allegations, Plaintiffs do not present any evidence of an employer-employee relationship between the Plaintiffs and Defendant VCDP Companies, Inc. d/b/a Superior Staffing & Payroll Services ("Superior") or Defendant Daniel Paz ("Paz"), much less such a relationship with Cotton Commercial USA, Inc. ("Cotton").  Determining each Plaintiff's alleged employment status requires an individualized assessment, such that Plaintiffs' claims cannot be resolved on a class-wide basis.  The same individualized assessment applies to the individual Plaintiffs' breach of contract claims, which will require determining the existence of and terms of each alleged agreement between each Plaintiff and Superior/Paz/Plaintiff Quintero Sr.

Plaintiffs' allegations also establish that they were not similarly situated to the putative class in their job duties or pay provisions.  Some Plaintiffs performed manual labor, while Plaintiff Quintero Sr. performed supervisory and managerial functions as a "Coordinator."  With regard to pay, Plaintiffs allege that Superior promised Clean-up Workers $10 or $11 per hour, while Superior allegedly promised Coordinators $24 per hour plus $1 per hour for every person they recruited for Superior.  Plaintiffs have also failed to show that any individuals, aside from those who have already opted into this case, wish to join this lawsuit.  With respect to Coordinators, Plaintiffs have not shown that any other individual desires to opt into this lawsuit.

Having failed to meet the "fairly lenient" conditional certification standard, it follows that Plaintiffs cannot satisfy the more rigorous standards for class certification under Rule 23.  Plaintiffs do not provide any justification for the alleged numerosity, commonality, or typicality of the class.  Plaintiffs also do not provide any justification for their claimed adequacy to represent the putative

class. In fact, Plaintiffs ignore the potential conflict of interest between the Coordinators and the Clean-up Workers. According to Plaintiffs, the Coordinators worked as "middle men" between the Clean-up Workers and defendants, but they also had the responsibility to collect timesheets from the Clean-up Workers and turn them in to Paz. Based on these supervisory duties, the Coordinators, including Plaintiff Quintero Sr., may have played a role in the Clean-up Workers' claims. This potential conflict suffices to deny certification under Rule 23.

These factual differences and the lack of support for class-wide resolution of this case require denial of Plaintiffs' Motion for Collective and Class Action Certification ("Motion") (Dkt. 32).

## II.   STATEMENT OF FACTS

**A.   Cotton Provides Disaster Recovery Services In Response To Natural And Other Calamities**.

Cotton provides disaster recovery services related to individual losses and major events, including weather-related and other natural catastrophes, terrorism, vandalism, and environmental mishaps. (**Ex. A**, Declaration of James Scaife ¶ 2.) Cotton strives to provide its clients continuity of operations and to reduce their business interruption and property loss claims. (**Ex. A**, Declaration of James Scaife ¶ 3.) Because the workforce needed to respond to natural disasters is transient and temporary, Cotton engages vendors, like Superior, to provide the short-term labor needed for some of its disaster recovery projects. (**Ex. A**, ¶¶ 4-6.)

**B.   Cotton Launches Into Action To Clean Up The Devastation Left Behind By Hurricane Irma**.

After Hurricane Irma made landfall in Florida in September 2017 (Amended Complaint, hereafter "Am. Comp." (Dkt. 31) ¶ 22), Cotton provided recovery services at the Hyatt Residence Club Key West, Windward Pointe (the "Hyatt Project") (Am. Compl. ¶ 9) and at the Hilton Key Largo Resort (the "Hilton Project") (Am. Compl. ¶ 10). Cotton engaged Superior as a vendor for

3

the Hyatt Project and Hilton Project.  (*See* Answer to Am. Compl., hereafter "Ans." (Dkt. 35) ¶ 1.)  Plaintiffs allege that Superior promised to pay them "at a rate of $10 or $11 per hour, depending on the site."  (Am. Compl. ¶ 33.)  Superior allegedly set the hourly rate at $11 for the Hyatt Project and at $10 for the Hilton Project.  (Am. Compl. ¶ 68.)

Plaintiffs Kassandra Cruz, Vanessa Cruz, Bellaliz González, Gustavo Hernández, Jennis Morales, José Moyeda, Samira Omar, David Romero, and Erick Villasana (the "Hyatt Project Plaintiffs") performed clean-up duties for Superior at the Hyatt Project following Hurricane Irma in 2017.  (Ans. ¶ 9.)  Plaintiffs Pedro Cabre, Kendry Cruz, Yormar Farfan, Noiralith González, and Reinaldo Quintero Jr. (the "Hilton Project Plaintiffs") performed clean-up duties for Superior at the Hilton Project following Hurricane Irma in 2017.  (Ans. ¶ 10.)  Plaintiffs' services to Superior included removing debris, chopping up trees, demolishing sheetrock, putting up new sheetrock, hauling fallen trees with tractors, and power-washing outside hotel walls, among other tasks.  (Am. Compl. ¶¶ 1, 29.)  Plaintiffs' duties required the use of drills, saws, forklifts and other heavy machinery.  (Am. Compl. ¶ 30.)

The Hyatt Project Plaintiffs received payment for their services after their first week of work.  (Am. Compl. ¶ 45; *see also* Decl. of Vanessa Cruz ¶ 12, hereafter "Vanessa Decl." (Dkt. 32-1) (stating that "all subsequent paychecks I received bounced."))  The Hilton Project Plaintiffs received payment for all of their work, except that the check they received for the final 1-2 weeks of work bounced.  (*See* Am. Compl. ¶ 53; *id.* ¶ 54 (limiting complaint to "lack of pay for the final week of work."); *see also* Decl. of Kassandra Cruz ¶ 12, hereafter "Kassandra Decl." (Dkt. 32-2.))

Plaintiff Reinaldo Quintero Sr. provided services to Superior as a Coordinator.  (Am. Compl. ¶¶ 27-28.)  Plaintiff Quintero Sr.'s job duties as a coordinator included, but were not limited to, recruiting workers, receiving, reviewing and transmitting timesheets to Superior, and

4

troubleshooting problems for workers, such as "coordinating their housing and work arrangements." (Am. Compl. ¶ 31; Decl. of Reinaldo Quintero ¶ 4, hereafter "Quintero Decl." (Dkt. 32-3.)) Plaintiffs also claim that Superior initially recruited workers for the clean-up sites with the help of Plaintiff Quintero Sr. (Am. Compl. ¶ 32.) Plaintiff Quintero Sr. "act[ed] as a middle-man between Defendants and the [Clean-up Workers]." (Am. Compl. ¶ 101.) For these duties, Superior allegedly set Quintero Sr.'s hourly rate at $24, with an additional dollar per hour for each person the Coordinator recruited. (Am. Compl. ¶¶ 57, 68; Quintero Decl. ¶ 6.)

**C.   Cotton Paid For Every Hour Superior Reported For The Plaintiffs' Work**.

During the course of the Hyatt Project and the Hilton Project, Superior submitted invoices to Cotton for the work the Hyatt Project and Hilton Project Plaintiffs performed at their respective sites.[1] (**Ex. A**, ¶ 7-8.) Cotton in turn paid Superior for each such invoice. (**Ex. A**, ¶ 9.) In total, Cotton paid Superior over $250,000.00 for services performed at the Hyatt Project and Hilton Project. (**Ex. A**, ¶ 10.)

Cotton has no information regarding whether or when Superior paid the Plaintiffs for their work, nor does Cotton know whether any putative class members received checks that bounced or were in fact cashed. (**Ex. A**, ¶ 11.) Likewise, Cotton has no information regarding any arrangements Superior had with any of the Plaintiffs, including whether Superior hired them as employees or retained them as independent contractors. (**Ex. A**, ¶ 12.) At no point did Cotton directly retain the services of any Plaintiff, nor did Cotton engage in any discussions with Plaintiffs regarding their rate of pay for any type of work. (*See* Am. Compl. ¶ 33 (stating that Superior made verbal promises to Plaintiffs regarding their wage rate.)) (**Ex. A**, ¶ 13.)

---

[1] Presumably, Superior's invoices were based on the timesheets Plaintiff Quintero Sr. collected for and submitted to Superior/Paz.

5

### D. Cotton Did Not Employ Any Of The Plaintiffs.

Plaintiffs do not allege that Cotton controlled or directed their work at either the Hyatt Project or the Hilton Project. (*See* Am. Compl.; *see also* Vanessa Decl. ¶ 9 (stating only that her "supervisors at the hotel site wore black vests with Cotton's name and logo[,]" and not providing any factual basis for asserting their supervisory status); *see also* Kassandra Decl. ¶ 9 (same.)) Instead, Plaintiffs focus on the requirement that they wear orange safety vests which had Cotton's name and logo on them, Cotton's provision of gloves and hard hats to Plaintiffs, and the use of timesheets or other forms with Cotton's logo on them. (Am. Compl. ¶¶ 34-35, 38-39; Vanessa Decl. ¶¶ 7-8, 10-11; Kassandra Decl. ¶¶ 7-8, 10-11.) However, Plaintiffs admit that the paychecks they did receive were issued by Superior and signed by Paz (Am. Compl. ¶ 37), and that they turned in timesheets to Plaintiff Quintero Sr., who submitted the timesheets to Paz (Am. Compl. ¶ 38).

### III.   ARGUMENTS[2]

#### A. Plaintiffs Have Failed To Satisfy The Standard For Conditional Certification Of A Collective Action Under The FLSA.

1. <u>Plaintiffs' Failure To Establish Their Status As "Employees" For Purposes Of The FLSA Dooms Their Motion</u>.

Even in a best-case scenario for Plaintiffs, there is a dispute as to whether Cotton employed or engaged any of the Plaintiffs in any capacity. Further, there is also a dispute as to whether Superior, Paz, or Plaintiff Quintero Sr. employed Plaintiffs, or engaged them as independent contractors, for FLSA purposes. In *Carrera v. UPS Supply Chain Solutions, Inc.*, 2012 WL 12860750 (S.D. Fla. Sep. 14, 2012), the Court decertified an FLSA collective action alleging

---

[2] The Motion does not seek to pursue Plaintiff Quintero Sr.'s and Plaintiff Hernández's retaliation claims on a class-wide basis. As such, Cotton does not address that claim in this response to the Motion.

6

misclassification of employees as independent contractors. In that case, the plaintiffs relied on the defendant's agreements and policies to argue in favor of class-wide resolution. *Id.* at *9. The Court reasoned that determining each plaintiff's status as an employee under the "economic realities" test would "var[y] significantly from plaintiff to plaintiff." *Id.*; *see also Andel v. Patterson-UTI Drilling Co., LLC*, 280 F.R.D. 287, 289-90 (S.D. Tex. 2012) (denying motion for conditional certification based on dispute regarding whether putative plaintiff were employees or independent contractors); *see Pfaahler v. Consultants for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888, at *2 (N.D. Ill. Feb. 8, 2000) ("In order to determine who is an independent contractor and who is an employee, the court would be required to make a fact-intensive, individual determination as to the nature of each potential claimant's employment relationship."); *Demauro v. Limo, Inc.*, No. 8:10-cv-413-T-33AEP, 2011 WL 9191, at *3 (M.D. Fla. Jan. 3, 2011) ("the individualized analysis needed to determine whether each driver is an independent contractor or employee for FLSA purposes precludes class certification").

In this case, Plaintiffs base their claims against Cotton on a joint employer theory, but Plaintiffs do not provide any proof that Cotton employed them. The only factual statements regarding employment indicate that Plaintiff Quintero recruited the Clean-up Workers for Superior and that Cotton did not intend to employ any of the Plaintiffs (**Ex. A** ¶¶ 14-15). Resolution of Plaintiffs' joint employer theory will require the same type of individualized analysis that led the Court in *Carrera* to decertify that class. Because Plaintiffs cannot establish their status as "employees" of any of the Defendants for purposes of the FLSA, and because of the material differences in the putative class' job duties and pay provisions, it is impossible to determine, on a class-wide basis, whether the putative class "suffered the same injury." *Dukes*, 564 U.S. at 349-50.

7

2. <u>Because Plaintiffs' Job Duties And Pay Provisions Differed Between Sites And Between Positions, They Are Not Similarly Situated To The Putative Class</u>.

Plaintiffs' allegations establish more dissimilarities amongst the putative class than they establish similarly-situated circumstances. Despite the "fairly lenient" threshold for conditional certification of an opt-in class under the FLSA, Plaintiffs must show the Court "more than only counsel's unsupported assertions that FLSA violations [are] widespread . . . ." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008) (quotations omitted; alteration in original). Specifically, Plaintiffs must establish that (1) the individuals they seek to represent are "similarly situated" in their job responsibilities and with respect to their terms of pay and (2) that other individuals want to join the lawsuit. *See, e.g.*, *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

Plaintiffs' declarations in support of their Motion only provide conclusory assertions and lack specificity as to the facts or legal issues that would support class-wide resolution. For example, Plaintiffs indicate that: "Based on [their] personal observations and experience, all laborers employed by defendants at the Hyatt in Key West were subject to the same pay policies and practices, as well as the same work rules." (Vanessa Decl. ¶ 15; Kassandra Decl. ¶ 15 (same for the Hilton Project.)) Plaintiffs further state that: "Based on [their] personal observations and experience, defendants did not pay any of the laborers . . . ." (Vanessa Decl. ¶ 16; Kassandra Decl. ¶ 16.) However, Plaintiffs do not provide any facts regarding what they observed or experienced to lead them to their conclusions. Plaintiffs thus leave the Court to assume that every putative class member suffered the same alleged harm. In other words, Plaintiffs' declarations do nothing more than parrot counsel's unsupported assertions that violations of the FLSA occurred.

Although Plaintiffs do not need to show that their positions are identical, they must show that their positions were similar. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir.

8

1996). The job duties of the Clean-up Workers and the Coordinators were not similar. The Clean-up Workers performed manual labor, including removing debris, chopping up trees, power-washing walls, and similar tasks. The Coordinators, on the other hand, recruited Clean-up Workers, sent them to their work locations, coordinated their housing and work arrangements, and collected and submitted their timesheets to Paz. The Coordinators thus acted as supervisors for Superior, or as "middle men" between the Clean-up Workers and Superior. As such, the work performed by the Clean-up Workers and the Coordinators did not share any similarities.

Likewise, the Clean-up Workers and Coordinators were not compensated on similar terms, and even the rates of pay for the Clean-up Workers varied by location. The Hyatt Project Plaintiffs claim that Superior promised them $10 per hour, while the Hilton Project Plaintiffs claim that Superior promised them $11 per hour. Plaintiff Quintero Sr. claims that Superior promised him a pay rate of $24 per hour plus $1 per hour for every person he recruited for Superior. Aside from the fact that Plaintiff Quintero Sr. fails to allege a specific number of Clean-up Workers for whom he takes recruiting credit, which will require individualized analysis, the differing pay rates and circumstances specific to each Plaintiff weigh against conditional certification of an opt-in class.

    3.    <u>Plaintiffs Provide No Evidence That Others Seek To Join This Case</u>.

Plaintiffs do not provide a factual basis for their claimed knowledge of other individuals who would opt into the lawsuit if given notice and an opportunity to join. (*See* Vanessa Decl. ¶ 17; Kassandra Decl. ¶ 17; Quintero Decl. ¶ 14.) Plaintiffs do not allege ever discussing the lawsuit with any such individuals, nor do they indicate when, if ever, those discussions occurred. Plaintiff Quintero Sr. also provides no evidence that any other Coordinator seeks to join the lawsuit. (*See* Quintero Decl.)

More importantly, Plaintiffs do not explain why, if additional individuals exist that want to join the lawsuit, these individuals have not already done so. Plaintiffs filed their Complaint (Dkt. 1) on September 17, 2019 on behalf of eight individual plaintiffs. In the three months since that original filing, Plaintiffs located an additional seven plaintiffs who opted into the lawsuit (Dkt. 31-1). Plaintiffs now seek an additional three months to search for more putative class members, but they have not provided any factual justification for their claimed knowledge of additional individuals whom they claim to know would participate in this lawsuit.

**B.      Plaintiffs Failed To Establish The Numerosity, Commonality, Typicality, And Adequacy Of Class-Wide Resolution As Required By Rule 23(a).**

To determine whether a case warrants certification as a class action, the Court must conduct a "rigorous analysis" to determine whether the evidence offered by Plaintiffs demonstrates that they have satisfied all of the prerequisites for class certification. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). The Court must also find that Plaintiffs met their burden of proof as to each element of Rule 23 based on evidence and not speculation. *See*, *e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (stating "that it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and that certification is proper only if the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." (Quotations omitted). As such, the Court should not rely on Plaintiffs' conclusory allegations that they have satisfied the requirements of Rule 23.

    1.      <u>Plaintiffs Failed to Address Whether Joinder Of All Putative Class Members Is Impracticable, Thereby Failing To Establish Rule 23's Numerosity Requirement</u>.

Plaintiffs do not explain why joinder of all members of the putative class is impracticable. (*See* Motion at 11-12.) According to Plaintiffs, the maximum number of class members is 50. (Am. Compl. ¶ 70.) Fifteen Plaintiffs have already opted into this case, and Plaintiffs have also contacted at least 10 additional potential Hyatt Project Plaintiffs (Vanessa Decl. ¶ 17) and at least

10

24 additional potential Hilton Project Plaintiffs (Kassandra Decl. ¶ 17; Quintero Decl. ¶ 14) who, after three months, have nonetheless chosen to not join the lawsuit. *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 700 (S.D. Fla. 2018) (stating that "mere allegations of numerosity are insufficient" to satisfy this requirement). Having already tried to obtain additional opt-in plaintiffs for three months, and having contacted 98% of the alleged putative class (15 named Plaintiffs and the additional 34 referenced in the Declarations), it appears that joinder of additional plaintiffs is not impracticable. The reality, however, appears to be that the 34 putative class members simply do not want to be part of this lawsuit. Aside from alleging that the putative class consists of approximately 50 total members (49 of whom have already been contacted), Plaintiffs do not provide any rationale that justifies class treatment over joinder of additional plaintiffs.

    2.    <u>Because Plaintiffs Have Not Proven Their Status As Employees Of Superior, Paz, Or Cotton, Their Claims Lack Commonality And Cannot Be Disposed Of On A Class-Wide Basis</u>.

In addition to the employer-employee relationship issue discussed above (*see* § III.A.1), the material differences between the work performed by the Clean-up Workers and Coordinators, as well as the pay provision differences, and individual terms of their alleged agreements with Superior/Paz/Plaintiff Quintero Sr., mean that the Plaintiffs lack a common injury as a class. The Coordinators acted in a supervisory capacity while the Clean-up Workers performed manual labor. In terms of pay, the Clean-up Workers allege different rates of pay based on the location of the work performed, and the Coordinators compensation included an hourly increase based on the number of Clean-up Workers recruited for Superior. Plaintiffs' breach of contract claims are also not amenable to class-wide resolution, as each Plaintiff must establish the existence and terms of his or her alleged agreement.

3. <u>Because Of The Individualized Analysis Required Of Each Plaintiff's Claim, The Class Representatives Claims Cannot Satisfy The Typicality Standard</u>.

While the class representatives allege to have claims that are similar to the putative class, the fact remains that each claim will require an individualized assessment and each claim will be subject to varying defenses. *See Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (stating that a sufficient "nexus exists 'if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'"). For example, the terms of each alleged agreement between a class member and Superior/Paz/Plaintiff Quintero Sr. may vary, and some class members may not allege the existence of an agreement. More importantly, Plaintiff Quintero's alleged responsibilities could arguably render him an "employer" for FLSA and FMWA purposes. Plaintiff Quintero Sr. thus finds himself in the position of potentially being responsible for harms alleged by his fellow class members. The individualized assessments required and the potential defense against, and unique to, Plaintiff Quintero Sr. defeat typicality. *See*, *e.g.*, *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 598 (3d Cir. 2012).

4. <u>Plaintiff Quintero Sr.'s Potential Status As An Employer Creates A Substantial Conflict Of Interest With The Class That Defeats Class Certification</u>.

With regard to the adequacy of the class representatives, Plaintiffs wholly ignore the conflict of interest presented by Plaintiff Quintero Sr.'s alleged role in recruiting them, supervising them, and collecting and submitting their timesheets to Superior/Paz. *See Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (vacating certification decision due to the trial court's failure to consider conflict of interest between the class representatives and the class). Based on these responsibilities, Plaintiff Quintero Sr. may have acted as the Clean-up Workers' employer, which creates a substantial conflict between him and the putative class. *See id.* Plaintiffs ignore this conflict altogether and instead focus only on the adequacy and breadth of

12

81809098v.3

expertise of their counsel, which Cotton does not dispute. (*See* Motion at 14-16.) Counsel's expertise, however, does not resolve the conflict between Plaintiff Quintero Sr. and the class. *Valley Drug*, 350 F.3d at 1189 ("named representatives cannot 'vigorously prosecute the interests of the class through qualified counsel' because their interests are actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members."). The class representatives will therefore not adequately represent the interests of the putative class.

C.  **The Individualized Analysis Required To Resolve Plaintiffs' Claims Predominates, And Thus Defeats, Any Alleged Numerosity, Commonality, Typicality, And Adequacy Of Class-Wide Resolution Under Rule 23.**

Even if Plaintiffs satisfied the requirements of Rule 23(a), their Motion requires denial because they have not satisfied the requirements of Rule 23(b)(3). "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Behrend*, 569 U.S. at 34. In fact, the existence of "individual damages calculations" will, by itself, defeat Rule 23(b)(3) predominance if the individualized calculations "will inevitably overwhelm questions common to the class." *Id.*; *but see Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 989 (indicating that *Comcast* does not foreclose certification where "there is no evidence to suggest that class-wide adjudication of . . . liability will be subsumed in or overwhelmed by an individualized damages inquiry.") Not only does this case require individualized assessments as to damages (*see* Motion at 17, conceding the need for individualized damages), but also as to each Plaintiff's status as an employee. (*See* § III.A.1, *supra*.) Determining each Plaintiff's employee status relates directly to the Defendants' potential liability in this lawsuit, because the FLSA and Florida Minimum Wage Act claims only apply to "employers." Such determinations will necessarily have to be made on an individualized basis.

Plaintiffs' breach of contract claims also require individualized analysis and evidence. Proving the existence of each contract will require each Plaintiff to establish the existence and

13

terms of his or her agreement with Superior/Paz/Plaintiff Quintero Sr. While Plaintiffs attempt to establish the existence and terms of their alleged agreements in general terms, it is impossible, as a matter of law, to prove the terms of these oral agreements on a class-wide basis.

The combination of the individualized analyses for damages, employee status, and proving each Plaintiff's alleged contract proves lethal for certification of this lawsuit under Rule 23.

## IV. OBJECTIONS TO PROPOSED NOTICE

Although Plaintiffs have failed to satisfy the flexible standard for conditional certification under the FLSA and the more rigorous standard for class certification under Rule 23, if the Court were to conditionally certify this action, Cotton objects to Plaintiffs' proposed notice (Dkt. 32-5) ("Proposed Notice") on the following grounds:

1. Despite already having communicated with the vast majority of the putative class and having more than three months to add class members, Plaintiffs seek an additional 90 days for the same purpose. Given the Court's Scheduling Order (Dkt. 20), Cotton believes that a notice period of 60 days is appropriate.

2. The Proposed Notice does not include a summary of Cotton's defenses to the claims.

3. Cotton does not possess any contact information for the putative class members, and to the extent any such information is discovered, the Proposed Notice should only be distributed by mail.

## V. CONCLUSION

For all the foregoing reasons, Cotton Commercial USA, Inc. respectfully requests that the Court deny Plaintiffs' Motion for Collective and Class Action Certification.

Dated:  December 23, 2019	By: /s/ *Dale A. Evans Jr.*
Dale A. Evans Jr. (Florida Bar No.: 98496)
Email: dale.evans@lockelord.com
**LOCKE LORD LLP**
777 South Flagler Drive, Suite 215-East
West Palm Beach, Florida 33401
Telephone: 561-833-7700

J. Michael Rose (Texas Bar No.: 24041819)
Email: mrose@lockelord.com
**LOCKE LORD LLP**
600 Travis Street, Suite 2800
Houston, Texas 77002
Telephone: 713-226-1684
*Admitted Pro Hac Vice*

Rufino Gaytán III (Texas Bar No.: 24069772)
Email: rufino.gaytan@lockelord.com
**LOCKE LORD LLP**
600 Travis Street, Suite 2800
Houston, Texas 77002
Telephone: 713-226-1379
*Admitted Pro Hac Vice*

*Counsel for Defendant Cotton Commercial USA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2019, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF electronic filing system, which will electronically transmit the foregoing to all counsel of record. A copy of the foregoing document was also sent via First Class Mail to the following parties:

VCDP Companies, Inc. d/b/a Superior Staffing & Payroll Services
c/o Adiurka Vega Cardoso
8130 Waters Ave., Suite 300
Tampa, FL 33615

Daniel Paz
9730 NW 20th Avenue
Miami, Florida 33147

                                                                          By:       */s/ Dale A. Evans Jr.*
                                                                                       Dale A. Evans Jr.

81809098v.3