# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO 19-10163-CIV-MARTINEZ-OTAZO-REYES**

| | |
|---|---|
| PEDRO J. CABRE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| COTTON COMMERCIAL USA, et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**SETTLEMENT AGREEMENT BETWEEN**
**PLAINTIFFS AND DEFENDANT COTTON COMMERCIAL USA**

This Settlement Agreement ("Agreement") is made and entered into by and among the Plaintiffs in the above-captioned case and Defendant Cotton Commercial USA ("Cotton"), and is based on the following:

**I.      RECITALS**

1.1      Plaintiffs are eighteen (18) individuals who have alleged that they were unpaid for work when they performed clean-up work following Hurricane Irma in the Fall of 2017. Twelve (12) of the Plaintiffs worked as laborers at the Hyatt Residence Club Key West, Windward Pointe ("Hyatt Key West"). Five (5) of the Plaintiffs worked as laborers at the Hilton Key Largo Resort ("Hilton Key Largo"). One (1) Plaintiff worked as a Coordinator. Plaintiffs filed their consents with the Court in the above-captioned action on either September 17, 2019, or December 9, 2019.

1.2      Defendant Cotton denies that Plaintiffs were employed by Cotton and has stated that Plaintiffs were employed by Defendant Superior Staffing & Payroll Services and Defendant VCDP Companies, Inc.

1.3     Plaintiffs have made certain allegations concerning their status with Cotton and Cotton has denied that Plaintiffs were employed by Cotton. By way of example, Plaintiffs allege that Cotton failed to pay minimum wages and overtime compensation, and engaged in unlawful retaliation, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Plaintiffs have also made allegations that Cotton failed to pay minimum wages in violation of Article X, Section 24 of the Florida Constitution as implemented by the Florida Minimum Wage Act, Fla. Stat. § 448.110. In addition, Plaintiffs have asserted that Cotton has breached its contract with Plaintiffs regarding the payment of certain hourly wages.

1.4     Cotton has defended this action on the grounds that Plaintiffs were not employees of Cotton and that Cotton paid Plaintiffs' employers, Defendant Superior Staffing & Payroll Services and Defendant VCDP Companies, Inc., in full, for all work done by Plaintiffs that was billed to Cotton by these entities.

1.5     Although Cotton contends that it never employed Plaintiffs, Cotton recognizes and will comply with applicable federal and state laws preventing any retaliation against Plaintiffs.

1.6     Plaintiffs and Cotton (hereinafter collectively referred to as "the Parties") have agreed to settle the matters in dispute between and among them pursuant to the terms of this Agreement. Specifically, the Parties and their counsel have considered that the interests of all concerned are best served by compromise, settlement, and dismissal of the Plaintiffs' claims against Cotton with prejudice. The Parties have concluded that the terms of this Agreement are fair, reasonable, adequate, and in the Parties' mutual best interests.

1.4.    The Parties agree that this Agreement is entered into solely on the basis of a compromise of disputed claims and this Agreement is not, and is not to be construed as, an admission by Cotton of any liability whatsoever or the employment status of any Plaintiff.

1.5.     The Parties agree that this Agreement does not affect the Plaintiffs' right to pursue claims against the remaining defendants, specifically Superior Staffing & Payroll Services, VCDP Companies, Inc., and Daniel Paz. The Parties also agree that this Agreement does not affect the Plaintiffs' right to seek additional damages from the remaining defendants, including attorneys' fees and costs. However, Plaintiffs agree that they do not have a right to recover backpay or liquidated damages greater than the maximum which they would be entitled to receive under the law should Plaintiffs prevail at trial on all claims.

1.6.     The Parties, through their counsel, hereby seek judicial approval of this Agreement. In the event the proposed settlement contained in this Agreement does not become effective in accordance with the terms hereof, is not finally approved, is terminated, cancelled or otherwise fails to become effective for any reason, this Agreement will no longer have any effect and the Parties will revert to their respective positions as of the date and time immediately prior to the execution of this Agreement.

1.7.     Upon final approval of the Agreement by the Court, the effective date of this Agreement (the "Effective Date") shall be considered the date that this Agreement was submitted to the Court for final approval.

## II.     PAYMENT AND DISTRIBUTION

2.1     In consideration for the terms, conditions, and promises in this Agreement, pursuant to paragraphs 2.2, 2.3, and 2.4, Cotton shall pay or will cause to be paid to Plaintiffs the total sum of $95,000.00 to resolve all claims for damages under the FLSA and Florida state law for time spent working at the Hilton Key West and/or Hilton Key Largo allegedly accruing for the period from September 17, 2016, through the date this Agreement is filed with the Court for approval ("the Settlement Amount"), inclusive of attorneys' fees and expenses. Of that amount, $50,000.00

3

constitutes backpay, liquidated damages, and other damages, and $45,000.00 constitutes attorneys' fees and costs.

2.2     The Settlement Amount will be divided and distributed as directed and instructed by Plaintiffs and as set forth in **Exhibit A** to this Agreement. Cotton's payment and adherence of the payment process is not an admission of the viability or truthfulness of any such claim.  As set forth in this Paragraph, Cotton will issue two separate checks to Plaintiffs' Counsel. First, Cotton will issue to Plaintiffs' counsel one check payable to McGillivary Steele Elkin LLP in the amount of **$50,000.00**, representing the settlement amount to be treated as backpay ($22,000), liquidated damages ($22,000) and other damages stemming from six Plaintiffs allegations of unlawful retaliation ($6,000). Plaintiffs' counsel will be responsible for allocating and distributing the backpay checks and liquidated damages portions of the Settlement Amount to the Plaintiffs in accordance with **Exhibit A**. Second, Cotton will issue one check payable to McGillivary Steele Elkin LLP in the amount of **$45,000.00** for attorneys' fees and expenses, which will be shared among Plaintiffs' Counsel McGillivary Steele Elkin LLP, Mierzwa & Floyd, P.A., and Resilience Force Justice Project in accordance with their agreement. These amounts are agreed to among the Parties to compromise, settle and satisfy the Released Claims and liquidated damages related to the Released Claims.

2.3     Within fourteen (14) calendar days of the date that Cotton receives both an executed copy of this Court's Order approving this Agreement, and a 1099 tax form from McGillivary Steele Elkin LLP, Cotton will forward to Plaintiffs' Counsel, McGillivary Steele Elkin LLP, all checks as described in Paragraph 2.2. Plaintiffs' counsel will be responsible for distributing the settlement checks representing backpay and liquidated damages to the Plaintiffs.  Cotton and Plaintiff's

Counsel represent that they are equipped to dispense and receive these items, current local stay-at-home and social distancing orders related to the COVID-19 pandemic notwithstanding.

2.4     Plaintiffs and their counsel determined the method used to calculate the amounts to be paid to each Plaintiff, based on the timekeeping data provided by Cotton for each individual Plaintiff. The calculation methodology computes individual damages for each Plaintiff for the claims asserted against Cotton in the instant lawsuit. Plaintiffs' and their counsel will defend, release, and hold Cotton harmless from any and all claims or causes of action arising from the distribution of settlement funds.

2.5     On or before January 31, 2021, Cotton shall distribute to Plaintiffs' Counsel, McGillivary Steele Elkin LLP, all applicable tax forms, if any, reflecting payments made pursuant to Paragraph 2.2 of this Agreement. Such forms shall be submitted to Plaintiffs' Counsel, McGillivary Steele Elkin LLP. None of the Parties make any representations regarding the tax consequences or liability of the foregoing payments.

2.6     Plaintiffs agree that should any of the payments be subject to any additional federal or state taxes, liens or garnishments, Plaintiffs bear the sole and exclusive responsibility for paying such taxes, as well as any interest and penalties imposed by the Internal Revenue Service thereon, and Plaintiffs agree to indemnify Cotton to the extent that the Internal Revenue Service seeks to recover unpaid taxes, penalties, and interest from Cotton or Plaintiffs on these payments. It is expressly understood and agreed that Plaintiffs have not relied whatsoever upon any advice from Cotton or its attorneys as to the taxability, whether pursuant to federal, state, or local tax statutes or regulations, or otherwise, of the consideration and benefits transferred hereunder.

## III.   __RELEASES__

3.1    All Plaintiffs for themselves, and their spouses and families, attorneys (if any), agents, executors, administrators, personal representatives, heirs, successors, any future estates, assigns and beneficiaries, and any and all of them (collectively, the "Releasers"), voluntarily and with the advice of counsel, fully and forever release, acquit, and discharge Cotton, its present or former officers, directors, subsidiaries, affiliates, parents, partners, employees, agents, attorneys, accountants, executors, administrators, personal representatives, heirs, successors and assigns, and any or all of them and all persons acting by, through, under, or in concert with any of them (collectively, the "Releasees"), in their personal, individual, official and/or corporate capacities, from: 1) all federal and state wage and hour claims asserted in the lawsuit, 2) all federal and/or state wage and hour claims that could have been asserted in the lawsuit, from September 17, 2016, through the date this Agreement is filed with the Court for approval, and 3) any and all claims, demands, actions, or causes of action, of any kind whatsoever, known or unknown, foreseen or unforeseen, foreseeable or unforeseeable, and any consequences thereof, which relate to any claims that Plaintiff may have against Cotton related to the time period that Plaintiffs performed work at Hyatt Key West and/or Hilton Key Largo, through the effective date of this Agreement (the "Released Claims").  This release does not extend to, nor purport to release, any statutory or common law claim(s) that the Parties may not release as a matter of law, including, by way of example, claims for workers' compensation.

3.2    All Plaintiffs shall be deemed to and shall have waived, released, discharged and dismissed all released claims against Cotton as set forth in Paragraph 3.1, with full knowledge of any and all rights they may have, and they hereby assume the risk of any mistake in fact in

connection with the true facts involved or with regard to any facts which are now unknown to them.

3.3     All Plaintiffs understand and agree that to the fullest extent permitted by law, they are precluded from filing or pursuing any legal claim or action of any kind against Cotton or any entity as described in Paragraph 3.1 at any time in the future, or with any federal, state or municipal court, tribunal or other authority arising out of the Released Claims for the time period beginning September 17, 2016, through the date that this Agreement is filed with the Court, with respect to the wage and hour claims asserted in this lawsuit against Cotton. Excluded from this release and covenant not to sue is any right or claim that cannot be waived by law, including but not limited to the right to file a charge with or participate in an investigation conducted by government agencies. Also excluded from this release and covenant not to sue is any right or claim to recover additional damages in this lawsuit against Superior Staffing & Payroll Services, VCDP Companies Inc., and Daniel Paz.

3.4     All Plaintiffs agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance. Each Plaintiff affirms that he/she has not been coerced, threatened, or intimidated into agreeing to the terms of this Agreement, and he/she has been advised to consult with their attorney should they have any questions

## IV.     <u>DISMISSAL OF CLAIMS</u>

4.1     Plaintiffs agree to dismissal of all claims asserted in the lawsuit against Cotton, as specified in Paragraph 3.1, with prejudice and in accordance with the attached Stipulation of Dismissal with Prejudice.

## V.   <u>NO ADMISSION OF LIABILITY</u>

5.1     Cotton does not admit any allegations made against it in any charges, complaints, grievances or lawsuits currently pending between the Parties. Nothing contained in this Agreement shall be deemed an admission of liability or of any violation of any applicable law, rule, regulation, order or contract of any kind.

## VI.   <u>CONTINUED JURISDICTION</u>

7.1     The U.S. District Court for the Southern District of Florida shall have continuing jurisdiction to construe, interpret and enforce the provisions of this Agreement, and to hear and adjudicate any dispute or litigation arising from this Agreement or the issues of law and facts asserted in or related to the instant action.

## VII.   <u>PARTIES' AUTHORITY</u>

8.1     The signatories hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof. The Parties acknowledge that the Court will review the terms of the Agreement to determine that they are reasonable and fair.

8.2     All of the Parties acknowledge that they have been represented by competent, experienced counsel throughout all negotiations which preceded the execution of this Agreement, and this Agreement is made with the consent and advice of counsel who have jointly prepared this Agreement.

8.3     Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement.

### VIII.   MUTUAL FULL COOPERATION

9.1     The Parties agree to use their best efforts and to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement and effectuate the terms of this Agreement.

### IX.   ENFORCEMENT ACTIONS

10.1     In the event that one or more of the Parties to this Agreement institutes any legal action, arbitration, or other proceeding against any other party or parties to enforce the provisions of this Agreement, the successful party or parties shall be entitled to recover from the unsuccessful party or parties' reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions.

### X.   MODIFICATION

11.1     This Agreement and its attachments may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.

### XI.   ENTIRE AGREEMENT

12.1     This Agreement and its attachments constitute the entire agreement between the Parties concerning the subject matter hereof.  No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this Agreement.  In the event of any conflict between this Agreement and any other settlement-related document, the parties intend that this Agreement shall be controlling.

### XII.   CHOICE OF LAW/JURISDICTION

13.1     This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Florida, both in its procedural and

substantive aspects, and shall be subject to the continuing jurisdiction of the United States District Court for the Southern District of Florida.  This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof.

## XIII.   <u>VOIDING THE AGREEMENT</u>

14.1    In the event this Agreement, or any amended version agreed upon by the parties does not obtain judicial approval for any reason, this Agreement shall be null and void in its entirety, unless expressly agreed in writing by all Parties.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the dates indicated below:

/s/ Erin F. Medeiros
Matthew J. Mierzwa, Jr., Esq.
Erin F. Medeiros, Esq.
MIERZWA & FLOYD, P.A.
3900 Woodlake Blvd., Suite 212
Lake Worth, Florida 33463
Telephone:  561-966-1200
Facsimile:  561-966-1231
E-mail:  mmierzwa@mierzwalaw.com
E-mail:  emedeiros@mierzwalaw.com
Date: June 11, 2020

/s/ Sara L. Faulman
Gregory K. McGillivary, Esq.
Sara L. Faulman, Esq.
Sarah M. Block, Esq.
E-mail:  gkm@mselaborlaw.com
E-mail:  slf@mselaborlaw.com
E-mail:  smb@mselaborlaw.com
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave. NW, Suite 1000
Washington, DC 20005
Telephone:  202-833-8855
Date: June 11, 2020

/s/ Kerry O'Brien
Kerry O'Brien, Esq.
E-mail:  kobrien@resilienceforce.org
RESILIENCE FORCE JUSTICE PROJECT
53 W. Jackson Blvd., Suite 1224
Chicago, Illinois 60604
Telephone:  202-316-8049
Facsimile:  773-214-0670
Date: June 11, 2020

Attorneys for Plaintiffs

/s/ Neil Kodsi
Neil Kodsi, Esq.
Florida Bar No. 0011255
Email: neil.kodsi@jacksonlewis.com
Stephanie M. Spritz, Esq.
Florida Bar No. 112138
E-mail: stephanie.spritz@jacksonlewis.com
JACKSON LEWIS P.C.
Two South Biscayne Boulevard, Suite 3500
Miami, Florida 33131-2374
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
Date: June 11, 2020

Attorneys for Defendant
Cotton Holdings, Inc. d/b/a Cotton
Commercial USA

**EXHIBIT A**

|  | Settlement Distribution |
|---|---|
| **Hyatt Plaintiffs** |  |
| Cruz, Kassandra | $ 3,315.86 |
| Gonzalez, Bellaliz | $ 3,890.96 |
| Hernandez, Gustavo | $ 3,935.51 |
| Villasana, Erick | $ 2,522.40 |
| Cruz, Vanessa | $ 3,010.43 |
| Morales, Jennis | $ 2,890.95 |
| Moyeda, Jose | $ 2,890.95 |
| Omar, Samira | $ 2,874.75 |
| Romero, David | $ 2,890.95 |
| Navas, Jerico | $ 3,297.64 |
| Omar, Valeria | $ 2,206.50 |
| Servodio, Moises | $ 3,206.51 |
|  |  |
| **Hilton Plaintiffs** |  |
| Cabre, Pedro | $ 2,030.33 |
| Farfan, Yormar | $ 2,022.23 |
| Gonzalez, Noiralith | $ 2,030.33 |
| Cruz, Kendy | $ 1,941.23 |
| Quintero Jr., Reinaldo | $ 2,030.33 |
|  |  |
| **Coordinator Plaintiffs** |  |
| Quintero, Reinaldo | $ 3,012.14 |
|  |  |
| **Total Amount** | $ 50,000.00 |